UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOE HAND PROMOTIONS, INC., | No. C-11-5570 EMC |
| Plaintiff, | |
| v. | **ORDER GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT** |
| HAROON MUJADIDI, | |
| Defendant. | **(Docket No. 15)** |
| _____/ | |

Plaintiff Joe Hand Promotions, Inc. ("JHP") has filed suit against Defendant Haroon Mujadidi, doing business as Zambur Bar & Grill. According to JHP, Mr. Mujadidi violated both federal and state law by intercepting and exhibiting a particular television program to which JHP was granted exclusive distribution rights. After Mr. Mujadidi failed to respond to the complaint, his default was entered, *see* Docket No. 10 (notice), and JHP moved for a default judgment. A hearing was held on JHP's motion on August 10, 2012. Mr. Mujadidi did not make an appearance at the hearing; moreover, he did not file a written opposition to the motion prior to the hearing.

Having considered the papers submitted, as well as all other evidence of record, the Court hereby **GRANTS** the motion for default judgment.

## I. FACTUAL & PROCEDURAL BACKGROUND

JHP's complaint and evidence submitted in support of its motion for default judgment establish the following.

JHP is a closed-circuit distributor of sports and entertainment programming. *See* Hand Aff. ¶ 3. JHP was granted exclusive nationwide commercial distribution rights to a particular television

1  program, namely, *Ultimate Fighting Championship 121: Rampage Jackson v. Lyoto Machida*
2  ("*UFC* program"). The program – which included undercard bouts – was to be broadcast on
3  November 20, 2010. *See* Compl. ¶ 10; Hand Aff. ¶ 3. JHP entered into sublicensing agreements
4  with various commercial entities pursuant to which it granted these entities limited sublicensing
5  rights, more specifically, the rights to publicly exhibit the program within their respective
6  commercial establishments. *See* Compl. ¶ 10; Hand Aff. ¶ 3.

7  On November 10, 2010, one of JHP's investigators, Mark Gerstle, entered a commercial
8  establishment known as Zambur Bar & Grill, which is owned or operated by Mr. Mujadidi. *See*
9  Gerstle Aff. at 1; Compl. ¶ 7. Mr. Gerstle paid no cover charge to enter the establishment. There
10 were two television screens inside which displayed the program at issue. *See* Gerstle Aff. at 1. JHP
11 has submitted evidence indicating that it is unlikely that the program at issue was innocently or
12 accidentally intercepted. *See* Hand Aff. ¶¶ 9-10 (stating that, to the best of his knowledge,
13 programming cannot be innocently or accidentally intercepted; also discussing means by which a
14 program can be unlawfully intercepted).

15 In his affidavit, Mr. Gerstle does not indicate whether he saw a cable box or a satellite dish in
16 or at the establishment. In the forty-five minutes that Mr. Kaplan was at the establishment, he
17 counted approximately 20 people (three different head counts). The capacity of the establishment is
18 about 40 people. *See* Gerstle Aff. at 2.

19 Based on the above, JHP has asserted the following causes of action in its complaint: (1)
20 violation of 47 U.S.C. § 605; (2) violation of 47 U.S.C. § 553; (3) conversion; and (4) violation of
21 California Business & Professions Code § 17200. In the currently pending motion, JHP expressly
22 seeks a default judgment on only the first and third causes of action. However, implicitly, it seeks a
23 default judgment on the second cause of action, that is, to the extent the Court declines to find a
24 violation of § 605.

## II. DISCUSSION

A. Service of Process

In deciding whether to grant or deny a default judgment, a court must first "assess the adequacy of the service of process on the party against whom default is requested." *Board of*

*Trustees of the N. Cal. Sheet Metal Workers v. Peters*, No. C-00-0395 VRW, 2000 U.S. Dist. LEXIS 19065, at *2 (N.D. Cal. Jan. 2, 2011). Under Federal Rule of Civil Procedure 4(e), Mr. Mujadidi may be served pursuant to the law of California, where this Court is located. *See* Fed. R. Civ. P. 4(e)(1). California law allows for substituted service on individual. *See* Cal. Code Civ. Proc. § 415.20. For individuals, before substituted service is permitted, there must be a showing that the summons and complaint could not, with reasonable diligence, be personally delivered. *See id.* § 415.20(b).

JHP has submitted declarations from a process server, testifying as to service on Mr. Mujadidi. The declarations indicate that Mr. Mujadidi could not, with reasonable diligence, be personally served. *See* Docket No. 8 (reflecting five attempts at personal delivery prior to substituted service). The declarations also reflect that substituted service in accordance with § 415.20 was effected. Accordingly, the Court finds that service of process was properly effected such that it may consider the merits of the motion for default judgment.

B.  *Eitel* Analysis

As noted above, Mr. Mujadidi's default was entered after he failed to respond to the complaint. After entry of a default, a court may grant a default judgment on the merits of the case. *See* Fed. R. Civ. P. 55.

A default judgment may not be entered, however, against an infant or incompetent person unless represented in the action by a general guardian or other such representative who has appeared. *See id.* Furthermore, a default judgment may not be entered against an individual in military service until after the court appoints an attorney to represent the defendant. *See* 50 U.S.C. App. § 521. In the instant case, JHP has provided sufficient evidence demonstrating that Mr. Mujadidi is not an infant, incompetent person, or a person in military service. *See* Riley Decl. ¶ 3. Accordingly, the Court may consider whether a default judgment may be entered against him.

"The district court's decision whether to enter a default judgment is a discretionary one." *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). Factors that a court may consider in exercising that discretion include:

**United States District Court**
For the Northern District of California

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). Upon entry of default, the factual allegations of the plaintiff's complaint will be taken as true, except for those relating to the amount of damages. *See TeleVideo Systems, Inc. v. Heidenthal*, 826 F.2d 915, 917 (9th Cir. 1987).

The Court concludes that many of the *Eitel* factors weigh in favor of granting JHP default judgment. For example, JHP would be prejudiced if default judgment were not granted because it would be denied the right to judicial resolution of its claims and would likely be without other recourse for recovery. *See Pepsico, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002) (stating that, "[i]f Plaintiffs' motion for default judgment is not granted, Plaintiffs will likely be without other recourse for recovery"). Also, because Mr. Mujadidi has not filed an answer to the complaint, there is nothing to suggest that there is a possibility of a dispute concerning material facts. In addition, there is no indication that Mr. Mujadidi's default was due to excusable neglect. The Court notes that not only were the summons and complaint served on Mr. Mujadidi but also the motion for entry of default, see Docket No. 9 (proof of service), and the currently pending motion for default judgment. See Docket No. 15 (proof of service). While at least one factor weighs against a default judgment – *i.e.*, the amount of money at stake because JHP seeks the maximum possible statutory damages, which appear to be disproportionate to the harm alleged – this is not enough on its own to bar a default judgment (at least in this case) as it may be addressed by the Court in deciding what damages should be awarded, assuming that a default judgment is otherwise appropriate.

The only factors that deserve closer analysis are the second and third factors – *i.e.*, the merits of JHP's substantive claim and the sufficiency of the complaint. "The Ninth Circuit has suggested that these two factors require that a plaintiff 'state a claim on which the [plaintiff] may recover.'" *Pepsico*, 238 F. Supp. 2d at 1175. As noted above, the following claims are at issue in this case: (1) violation of 47 U.S.C. § 605; (2) violation of 47 U.S.C. § 553; and (3) conversion. The Court

United States District Court / For the Northern District of California

concludes that JHP has failed to adequately state a claim for relief under § 605 but that it has stated a claim under § 553 as well as a claim for conversion.

Title 47 U.S.C. § 605 "prohibits commercial establishments from intercepting and broadcasting to its patrons *satellite* cable programming." *J&J Sports Prods., Inc. v. Ro*, No. C 09-02860, 2010 U.S. Dist. LEXIS 21425, at *7 (N.D. Cal. Feb. 19, 2010) (internal quotation marks omitted; emphasis added). In contrast, 47 U.S.C. § 533 "prohibits a person from intercepting or receiving or assisting in intercepting or receiving any communications service offered over a *cable system*." *Id.* at *8 (internal quotation marks omitted; emphasis added). In other words, "[a] signal pirate violates section 553 if he intercepts a cable signal, [but] he violates [section] 605 if he intercepts a satellite broadcast." *J&J Sports Prods., Inc. v. Manzano*, No. C-08-01872 RMW, 2008 U.S. Dist. LEXIS 84931, *6 (N.D. Cal. Sept. 29, 2008) (emphasis added); *see also Charter Communs. Entm't I v. Burdulis*, 460 F.3d 168, 173 (1st Cir. 2006) (stating that "[s]ection 605 deals with communications traveling through the air (via radio), whereas § 553 covers communications traveling over cable wire"). In general, a plaintiff may not recover under both § 605 and § 553, *see Ro*, 2010 U.S. Dist. LEXIS 21425, at *8, as it is highly unlikely that a pirate used a satellite dish and a cable box to broadcast a single program simultaneously. *See Joe Hand Promotions, Inc. v. White*, No. C 11-01331 CW (JSC), 2011 U.S. Dist. LEXIS 107332, at *10 (N.D. Cal. Aug. 2, 2011), *adopted by* 2011 U.S. Dist. LEXIS 107099 (N.D. Cal., Sept. 21, 2011).

In the instant case, JHP asks that the Court grant a default judgment on its § 605 claim over its § 553 claim, presumably, because higher damages are available under the former statute. However, there is no evidence before the Court as to whether the establishment at issue had a satellite dish. JHP's investigator, Mr. Gerstle, provided no testimony on this point in his affidavit. JHP suggests that it should not be blamed for not being able to determine the precise means used by Mr. Mujadidi to intercept the *UFC* program, *see* Mot. at 8, but there is no indication that it made any attempt to do so. For example, JHP could have filed a third party subpoena or requested an order for inspection. The fact that Mr. Mujadidi defaulted does not rule out JHP's opportunity to take third-party discovery. *See White*, 2011 U.S. Dist. LEXIS 107332, at *10-11. At the very least, JHP could

have sent someone out to the establishment at issue to see if a satellite dish could be seen from the outside.

In the absence of any evidence indicating that a satellite dish was used, the Court concludes that JHP has established at most interception through use of a cable box. *See also J&J Sports Prods., Inc., v. Basto,* No. C 10-5122 PJH, 2011 WL 3297756, at *3 (N.D. Cal. June 6, 2011) (noting that "cable boxes are more easily hidden and more likely to be the source of transmission"); *J&J Sports Prods., Inc. v. Guzman*, No. C 08-05469 MHP, 2009 U.S. Dist. LEXIS 32273, at *6 (N.D. Cal. Apr. 16, 2009) (noting that "a cable box is more easily hidden"). The Court therefore concludes that default judgment on the § 605 claim is not appropriate but proper as to the § 553 claim.

As for the claim for conversion, the Court concludes that default judgment is also appropriate because JHP has adequately stated a claim for relief. Under California law, the tort of conversion has three elements: (1) ownership or right to possession of property; (2) wrongful disposition of the property right of another; and (3) damages. *See G.S. Rasmussen & Assoc. v. Kalitta Flying Serv.*, 958 F.2d 896, 906 (9th Cir. 1992). In the instant case, JHP alleges that it obtained the distribution rights for the program at issue and that Mr. Mujadidi unlawfully intercepted the program and wrongfully converted it for his own use and benefit. *See* Compl. ¶¶ 9, 12, 24. JHP further alleges that Mr. Mujadidi deprived it of the license fee to which it would have been entitled had Mr. Mujadidi obtained a license from JHP. *See* Compl. ¶ 25. Accordingly, the conversion claim is legally sufficient.

C.  Damages

While allegations of the complaint must be taken as true in establishing liability, a plaintiff must prove up its damages. *See Televideo*, 826 F.2d at 917-18; *see generally* Fed. R. Civ. P. 55(b)(2).

1.  Section 553 Claim

Presumably, JHP seeks the maximum statutory and enhanced damages for the § 553 violation, just as it sought the maximum statutory and enhanced damages for the alleged § 605 violation. *See also* Compl. at 9 (asking for $60,000 in damages for the § 553 claim).

Under § 553, "the party aggrieved may recover an award of statutory damages for all violations involved in the action, in a sum of not less than $ 250 or more than $ 10,000 as the court considers just." 47 U.S.C. § 553(c)(3)(A)(ii). In addition, "[i]n any case in which the court finds that the violation was committed willfully and for purposes of commercial advantage or private financial gain, the court in its discretion may increase the award of damages, whether actual or statutory under subparagraph (A), by an amount of not more than $ 50,000." *Id.* § 553(c)(3)(B).

The Court addresses first statutory damages. In its analysis of appropriate statutory damages, the Court may consider the cost of a commercial license for the program at issue (purportedly $900), Mr. Mujadidi's incremental profits (which would take into account Mr. Mujadidi's advertising of the program, the number of patrons at the establishment, and profits made from, *e.g.*, a cover charge or an increase in food prices), and the need to deter piracy.[1] *See White*, 2011 U.S. Dist. LEXIS 107332, at *13-14; *J&J Sports Prods., Inc. v. Mosley*, No. C-10-5126 CW (EMC), 2011 U.S. Dist. LEXIS 56220, at *13-14 (N.D. Cal. Apr. 13, 2011), *adopted by* 2011 U.S. Dist. LEXIS 56549 (N.D. Cal. May 25, 2011). "'[I]n the absence of unusual or particularly egregious circumstances under

---

[1] Although numerous courts have found these factors appropriate to consider, JHP challenges many of them. For example, JHP contends that Mr. Mujadidi's advertising of the program should not be considered because any advertising preceded the unlawful act of intercepting the program. *See* Hand Decl. ¶ 15. This argument misses the point. There is no dispute that the unlawful act is the intercepting of the program and not the mere advertising. But Mr. Mujadidi's promotion of the program is still relevant to the issue of damages; for instance, the more the program was promoted, the more reprehensible Mr. Mujadidi's conduct would be and, arguably, the more Mr. Mujadidi's profits could be attributed to the exhibition of the program. JHP also argues that pirates are unlikely to advertise as they want to avoid detection and may well rely on other means of promotion such as word of mouth. *See* Hand Decl. ¶ 16. While this may be true, the fact remains that JHP has not submitted any evidence indicating promotion of any kind by Mr. Mujadidi. Such evidence would not have been impossible to procure. The investigator, for instance, could have asked patrons whether they knew that the program was to air at the establishment and, if so, how.

JHP also asserts in its papers that the Court should not consider whether there was an increase in food or drink prices. According to JHP, even its legal licensees do not do not typically employ that method to pay for the licensing fee. JHP also notes that its investigators do not "benchmark" the prices of food and drink so it is unknown whether the cost of food and drink on the day of the broadcast is in fact increased. *See* Hand ¶ 17. As above, JHP's arguments here miss the point. Whether or not there was an increase in food and drink prices is simply one way to try to gauge Mr. Mujadidi's profits. As for JHP's investigators not benchmarking prices, that is something that could easily be done. An investigator could go to the establishment for a few days after the broadcast to see whether there were any change in prices.

The bottom line is that the factors typically considered by courts, as listed above, are appropriate for consideration as they are geared toward determining to what extent a defendant may have profited from its piracy.

which a defendant broadcast the fight,' maximum statutory damages are inappropriate." *Guzman*, 2009 U.S. Dist. LEXIS 32273, at *8. "Several courts in this district . . . have found that an award of the statutory minimum is appropriate where, among other things, 'events are broadcast on a single occasion to a small audience, and the plaintiff produces little or no evidence of financial gain.'" *J & J Sports Prods. v. Huezo*, No. 4:09-CV-04906 CW EDL, 2010 U.S. Dist. LEXIS 143126, at *11 (N.D. Cal. Mar. 29, 2010) (report and recommendation, adopted by district court on July 2, 2010).

In the instant case, these factors weigh heavily against anything more than a nominal statutory damages award, certainly nothing close to the maximum of $10,000 requested by JHP. For example, Mr. Gerstle states in his affidavit that he did not pay a cover charge. He does not indicate in his affidavit that the prices for food or drink were set at a premium; in fact, he states that the establishment rates were "[g]ood." Gerstle Aff. at 2. There were only 20 or so patrons in the establishment at the time, and the program at issue appears to have been exhibited on only two televisions. Nothing in Mr. Gerstle's affidavit suggests that Mr. Mujadidi advertised the program as a way to draw in customers.

In light of the above, the absence of evidence of JHP's damages (other than the lost licensing fee), and the absence of any indication that Mr. Mujadidi are repeat offenders, the Court concludes that an award of $1,500 is appropriate, which is a rough approximation of the loss incurred by JHP (*i.e.*, the licensing fee of $900) plus some margin for profits earned by Mr. Mujadidi from the event. This sum more than likely exceeds Mr. Mujadidi' profits given the modest number of patrons and the lack of a cover charge. *See Mosley*, 2011 U.S. Dist. LEXIS 56220, at *14-15 (recommending award of $2,500 where licensing fee was $2,200); *see also White*, 2011 U.S. Dist. LEXIS 107332, at *15-16 (recommending award of $1,400 where licensing fee was $1,100); *J&J Sports Prods., Inc. v. Concepcion*, No. C 10-05092 WHA, 2011 U.S. Dist. LEXIS 60607, appendix (N.D. Cal. June 7, 2011) (providing chart on § 605/§ 553 cases involving representation by Riley law firm, counsel of record in the case at bar, albeit a different client from JHP; indicating that statutory damages awarded in this District typically are in $1,000 to $2500 range).

The Court notes that, in reaching this conclusion, it has taken into account JHP's position that it should award a higher amount in statutory damages as other courts have done. But those

1  courts are courts from outside this District, *e.g.*, the Eastern District of California and the Southern
2  District of Texas. Within this District, the statutory damages awards have consistently been on the
3  lower side. *See Mosley*, 2011 U.S. Dist. LEXIS 56220, at *17-18. To the extent JHP suggests that
4  the low damages awards are "a major reason why there [has] been little to no decrease in piracy,"
5  Mot. at 19, *see also* Hand Decl. ¶ 13, that assertion is completely speculative and without any
6  concrete evidentiary support.

7  As for enhanced damages, as noted above, § 553 allows for additional damages up to
8  $50,000 where "the violation was committed willfully and for purposes of direct or indirect
9  commercial advantage or private financial gain . . . ." 47 U.S.C. § 533(c)(3)(B). In an affidavit,
10 JHP's president states that, to the best of his knowledge, JHP's programming cannot be mistakenly,
11 innocently, or accidentally intercepted.[2] *See* Hand Decl. ¶ 9. While this statement is somewhat
12 conclusory and does not foreclose the possibility that JHP's programming could be accidentally
13 intercepted, it is unlikely that the interception here was accidental. Spontaneous unscrambling of a
14 signal is less likely to occur than deliberate unscrambling. *See Mosley*, 2011 U.S. Dist. LEXIS
15 56220, at *18. Furthermore, JHP has presented evidence that Mr. Mujadidi has been sued in a
16 different case by a different plaintiff for the same kind of conduct, *see J&J Sports Prods., Inc. v.*
17 *Mujadidi*, No. 11-5423 YGR (JCS) (N.D. Cal.); there, Mr. Mujadidi also failed to respond to the
18 complaint which led to the plaintiff seeking a default judgment. This evidence suggests that Mr.
19 Mujadidi may well be a "repeat offender." The Court therefore finds that there is sufficient evidence
20 to establish that the interception and broadcast was for purposes of direct or indirect commercial
21 advantage.

22 While the Court thus concludes that enhanced damages should be awarded, it shall not award
23 the maximum as JHP has requested. JHP has not pointed to any specific circumstances that would
24 warrant the highest possible award. Also, the Court cannot divine any special reason why the
25 highest possible award should be granted. Although Mr. Mujadidi may well be a repeat offender,
26 JHP has provided evidence of only two instances of misconduct. The Court thus finds that an

---

[2] JHP's president goes on to describe multiple ways by which a pirate can unlawfully intercept and broadcast one of its programs. *See* Hand Decl. ¶ 10.

enhanced damages award of $4,000 is appropriate. Such an amount serves the purpose of removing profits from Mr. Mujadidi and deterring any future piracy. *See Mosley*, 2011 U.S. Dist. LEXIS 56220, at *18-19.

  2. <u>Conversion Claim</u>

  Finally, JHP seeks $900 in damages for the conversion claim. California Civil Code § 3336 provides:

> The detriment caused by the wrongful conversion of personal property is presumed to be:
>
> First – The value of the property at the time of the conversion, with the interest from that time, or, an amount sufficient to indemnify the party injured for the loss which is the natural, reasonable and proximate result of the wrongful act complained of and which a proper degree of prudence on his part would not have averted; and
>
> Second – A fair compensation for the time and money properly expended in pursuit of the property.

Cal. Code Civ. Proc. § 3336. Here, JHP has submitted evidence that the sublicense fee for the program at issue would have been $900. *See* Hand Aff. ¶ 8 & Ex. 1. Accordingly, the Court concludes that the $900 requested by JHP is a proper award to compensate for the unlawful conversion.

### III. CONCLUSION

  For the foregoing reasons, the Court grants JHP's motion for default judgment with respect to the § 553 and conversion claims but denies the motion with respect to the § 605 claim. For the § 553 and conversion claims, the Court awards $5,500 and $900 respectively, for a total of $6,400.

  IT IS SO ORDERED.

Dated: August 14, 2012

                _____
                EDWARD M. CHEN
                United States District Judge